IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNIVERSAL INNOVATIONS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-501-RGA |
| | : | |
| CS INDUSTRIES, INC.; BUYSEASONS, INC. | : | |
| d/b/a CELEBRATE EXPRESS and | : | |
| CELEBRATEEXPRESS.COM, BIRTHDAY | : | |
| EXPRESS and BIRTHDAYEXPRESS.COM, | : | |
| and COSTUME EXPRESS and | : | |
| COSTUMEEXPRESS.COM; and PARTY | : | |
| CITY CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Dominick T. Gattuso, PROCTOR HEYMAN, LLP, Wilmington, DE; Delphine W. Knight Brown (argued), CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, New York, NY.

  Attorneys for Plaintiff Universal Innovations, LLC.

Kelly E. Farnan (argued), RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

  Attorneys for Defendant Party City Corporation.

December 11, 2012

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Universal Innovations, LLC filed this patent infringement action against Defendants CS Industries, Inc., BuySeasons, Inc., d/b/a Celebrate Express and Celebrateexpress.com, Birthday Express and Birthdayexpress.com, Costume Express and Costumeexpress.com, and Party City Corporation on June 6, 2011. (D.I. 1). Universal alleges that the Defendants infringe U.S. Patent No. 5,187,512 ("the '512 Patent"). (D.I. 1). The '512 Patent, entitled "Film Cassette Containing Pre-Exposed Film," relates to "apparatus and processes for pre-exposing only certain portions of the frames of a film strip before the strip is exposed in a camera." '512 Patent at col.1 ll.14-16. Presently before the Court is the matter of claim construction. Briefing on claim construction was completed on September 28, 2012, and the Court held a *Markman* hearing on November 14, 2012. Two terms are in dispute.

## I. CLAIM CONSTRUCTION

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 388-90 (1996). When construing patent claims, a court considers the literal language of the claim, the patent specification and the prosecution history. *Id.* at 979. Of these sources, the specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v.*

2

*Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

A court may consider extrinsic evidence, including expert and inventor testimony, dictionaries and learned treatises, in order to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Phillips*, 415 F.3d at 1318-19; *see also Markman*, 52 F.3d at 979-80. However, extrinsic evidence is considered less reliable and less useful in claim construction than the patent and its prosecution history. *Phillips*, 415 F.3d at 1318-19 (discussing "flaws" inherent in extrinsic evidence and noting that extrinsic evidence "is unlikely to result in a reliable interpretation of a patent claim scope unless considered in the context of intrinsic evidence").

In addition to these fundamental claim construction principles, a court should also interpret the language in a claim by applying the ordinary and accustomed meaning of the words in the claim. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984). If the patent inventor clearly supplies a different meaning, however, then the claim should be interpreted according to the meaning supplied by the inventor. *Markman*, 52 F.3d at 980. If possible, claims should be construed to uphold validity. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

### A. Claim 8: "Means for defining (a) two film holding cavities and (b) an exposure frame opening located intermediate said cavities"

| **Defendant's Proposed Construction:** | This is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>Apparatus for housing a pre-exposed frame of a film strip in a camera of the disposable type. |
|---|---|

3

|  | Structure: <br> A film roll receiving cavity 114 and a film canister or cassette receiving chamber 116 disposed on opposite sides of an exposure frame 112. Projecting from the top wall of the film canister receiving chamber 116 is a fork 118 which is rotatable by the external film advancing knob 110 in the clockwise direction as viewed in FIG. 8. |
|---|---|
| **Plaintiff's Proposed Construction:** | Universal Innovations does not believe that this term requires construction. However, if the Court sees fit to construe this term, Universal Innovations proposes the following: <br><br> Structure: <br> The film holding cavities are shown in FIG. 7 and 8 and identified in their associated descriptions as being the cavities denoted by reference numerals 114 and 116. Similarly, the exposure frame is denoted by reference numeral 112. The structure in the specification which performs the recited functions of this claim element is the curved interior portions of the front part of the camera housing, 100 and the interior periphery of the camera housing located laterally between those curved portions and between the lens and film in the depth direction (the portion into which light will pass when the shutter is opened), as illustrated in FIG. 8. <br><br> Thus, the recited "means for defining" element is the curved interior portions of the front part of the camera housing between the lens and film through which light will pass when the shutter is opened. |
| **Court's Construction:** | Function: <br> Apparatus for housing a pre-exposed frame of |

|  | a film strip in a camera of the disposable type.<br><br>Structure:<br>A film roll receiving cavity 114 and a film canister or cassette chamber 116 disposed on opposite sides of an exposure frame 112. |
|---|---|

Because the parties agree that this term is in a "means-plus-function" format, the Court will construe it accordingly with the function being "apparatus for housing a pre-exposed frame of a film strip in a camera of the disposable type" and the corresponding structure being "a film roll receiving cavity 114 and a film canister or cassette chamber 116 disposed on opposite sides of an exposure frame 112."

The parties agree on the function. (D.I. 82 at 10-11). Thus, the only dispute as to this term is the corresponding structure. The parties agree that the film holding cavities are denoted by reference numerals 114 and 116. The crux of the dispute, therefore, is whether the corresponding structure includes a fork 118 and a knob 110. The Court finds that it does not. The film holding cavities are shown in Figures 7 and 8 and identified in their associated descriptions as being the cavities denoted by reference numerals 114 and 116. Similarly, the exposure frame is denoted by reference numeral 112. The specification does not describe a fork 118 or knob 110 as being part of the term "means for defining (a) two film holding cavities and (b) an exposure frame opening located intermediate said cavities."

    **B.**    **Claim 8: "Means for configuring said exposure frame opening such that the periphery of said opening corresponds with the periphery of said unexposed portion of said frame so as to prevent further exposure of said first latent image during the forming of a second latent image in the unexposed portion of said frame by image carrying light rays passing through said exposure frame opening during an exposure"**

5

| | |
|---|---|
| **Defendant's Proposed Construction:** | This is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>Ensuring that as light enters the lens and shutter only that which passes through the exposure aperture in the mask will strike the film frame.<br><br>Structure:<br>The exposure frame 112 is formed with film guiding and supporting tracks 120 on both sides thereof. In one of the tracks 120, there is a sprocket wheel 122 of a metering pawl partially projecting out of the surface. When assembling the film package 98, a mask 141 is attached to and positioned over the track 120 and a roll 130 of film 126, preferably 35 mm, is held at its end by a member 128 and a cassette 124 by a member 134. |
| **Plaintiff's Proposed Construction:** | Universal Innovations does not believe that this term requires construction. However, if the Court sees fit to construe this term, Universal Innovations proposes the following definition:<br><br>Function:<br>Redefining of the exposure frame opening so that only the previously unexposed portion will be exposed to light when the second image is formed.<br><br>Structure:<br>Either integrally formed or separate opaque mask 141 between the camera lens and the film that aligns with that portion of the film strip that has been previously exposed and must be blocked from the second exposure. Thus, the "means for configuring" element is the opaque mask in the camera, which can be either removable or integrally formed with the |

6

|  | camera housing, that blocks light from exposing the previously exposed portion of the film. |
|---|---|
| **Court's Construction:** | Function:<br>Ensuring that the light entering through the lens and shutter only strike the unexposed portion of the film frame.<br><br>Structure:<br>The exposure frame 112 is formed with film guiding and supporting tracks 120 on both sides thereof. In one of the tracks 120, there is a sprocket wheel 122 of a metering pawl partially projecting out of the surface. When assembling the film package 98, a mask 141 is attached to and positioned over the track 120 and a roll 130 of film 126, preferably 35 mm, is held at its end by a member 128 and a cassette 124 by a member 134. |

Because the parties also agree that this term is in a "means-plus-function" format, the Court will construe it accordingly, with the function being "ensuring that the light entering through the lens and shutter only strike the unexposed portion of the film frame" and the corresponding structure being "the exposure frame 112 is formed with film guiding and supporting tracks 120 on both sides thereof. In one of the tracks 120, there is a sprocket wheel 122 of a metering pawl partially projecting out of the surface. When assembling the film package 98, a mask 141 is attached to and positioned over the track 120 and a roll 130 of film 126, preferably 35 mm, is held at its end by a member 128 and a cassette 124 by a member 134."

The specification supports this interpretation of the function. For example, the specification describes an invention where "[e]ach frame of the strip is . . . masked and exposed

to light which passes through nonopaque areas of the mask in order to expose the underlying film to an image contained on said nonopaque areas of the mask." '512 Patent at col.2 ll.48-52. The specification further describes that "[t]he mask prevents exposure of one portion of the film unit while a different portion of the film unit is exposed to said image on the mask." *Id.* at col.2 ll.52-55. Finally, the specification also explains that "[i]n order for the invention to work properly, the first frame on the film strip must be aligned precisely with the mask used with the second exposure." *Id.* at col.3 ll.43-45.

With respect to the corresponding structure, the primary dispute is whether the mask 141 can be either removable or integrally formed with the camera housing. The Court finds that the corresponding structure does not include a removable mask because the specification does not link a removable mask 141 to the corresponding structure that performs the means for configuring function in a disposable camera. *See id.* at fig. 8, col.8 ll.53-59 (explaining mask 141 is part of internal structure in preferred embodiment). Because the specification does not clearly disclose how to incorporate a removable mask 141 into a disposable camera or clearly link a removable mask to the "means for configuring" function, a removable mask 141 is not part of the "means for configuring" term.

Additionally, a removable mask is not an equivalent structure to an integrated mask. A removable mask is added to the camera after manufacture and allows a photographer to take pictures with or without the mask. *Id.* at col.8 ll.23-42. Thus, the removable mask does not perform the claimed function in substantially the same way as the integrated mask and is not an equivalent structure. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

8

The parties also dispute whether "the roll of film, supported by a member, and a cassette, supported by a member" are part of the corresponding structure. The specification recites that "[t]he exposure frame 112 is formed with film guiding and supporting tracks 120 on both sides thereof. In one of the tracks 120, there is a sprocket wheel 122 of a metering pawl partially projecting out of the surface." *Id.* at col.8 ll.11-14. The specification further recites: "When assembling the film package 98, a mask 141 is attached to and positioned over the track 120 and a roll 130 of film 126, preferably 35mm, is held at its end by a member 128 and a cassette 124 by a member 134." *Id.* at col.8 ll.15-18. Universal contends that the corresponding structure does not include "the roll of film, supported by a member, and a cassette, supported by a member" because they "are not included in the 'means for configuring' term." (D.I. 82 at 19). However, if the roll of film is not held in its proper place, the periphery of the exposure frame opening will not correspond with the periphery of the unexposed portion of said frame, preventing further exposure of the first latent image. *See id.* at col.3 ll.42-45. Under a means-plus-function limitation, the corresponding structure that enables the function is part of the claimed term. *See Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311-12 (Fed. Cir. 2001). Thus, "a roll of film 126 held at its end by a member 128 and a cassette 124 by a member 134" are part of the corresponding structure that performs the claimed function.

The claim terms will be construed as set forth above.